Nos. 2013-1338, -1346

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

ABBVIE DEUTSCHLAND GMBH & CO., KG, ABBVIE BIORESEARCH CENTER, INC., AND ABBVIE BIOTECHNOLOGY LTD.,

*Plaintiffs-Appellants*,

v.

JANSSEN BIOTECH, INC. AND CENTOCOR BIOLOGICS, LLC,

*Defendants-Appellees.*

Appeals from the United States District Court for the District of Massachusetts in consolidated No. 09-CV-11340, Judge F. Dennis Saylor, IV

## REPLY BRIEF FOR PLAINTIFFS-APPELLANTS

WILLIAM G. MCELWAIN
THOMAS G. SAUNDERS
RACHEL L. WEINER
MATTHEW GUARNIERI
WILMER CUTLER PICKERING
   HALE AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, DC  20006
(202) 663-6000

ARTHUR W. COVIELLO
WILMER CUTLER PICKERING
   HALE AND DORR LLP
950 Page Mill Road
Palo Alto, CA  94304
(650) 858-6000

WILLIAM F. LEE
WILMER CUTLER PICKERING
   HALE AND DORR LLP
60 State Street
Boston, MA  02109
(617) 526-6000

ROBERT J. GUNTHER, JR.
JANE M. LOVE
VIOLETTA WATSON
WILMER CUTLER PICKERING
   HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY  10007
(212) 230-8800

December 16, 2013

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................ iii

INTRODUCTION ................................................................................1

ARGUMENT .....................................................................................3

I.  ABBVIE'S PATENTS SATISFY THE REPRESENTATIVE SPECIES TEST FOR
    WRITTEN DESCRIPTION .....................................................................3

    A.  Each Claimed Genus Is Small Relative To The Number Of
        Disclosed Species ...................................................................4

    B.  The Disclosed Species Are Representative ...........................................6

II. ABBVIE'S PATENTS ENABLE REPRESENTATIVE SPECIES FOR EACH
    GENUS CLAIM ...........................................................................10

III. COLLATERAL ESTOPPEL REQUIRES A REMAND OF BOTH ACTIONS ..............11

    A.  Collateral Estoppel Is Properly Before This Court .............................11

    B.  The Pendency Of The Section 146 Action Did Not Render The
        Board's Judgment "Not Yet Final" ................................................14

    C.  Having Chosen To Litigate Validity Before The BPAI,
        Centocor Cannot Now Complain About Its Procedures, Which
        Are Fair..........................................................................16

IV. IN THE ALTERNATIVE, A NEW JURY TRIAL IS WARRANTED .........................18

    A.  The District Court's Exclusion Of Evidence Regarding The
        Interference And File History Warrants A New Trial .......................18

        1.  The district court improperly foreclosed AbbVie from
            presenting important evidence regarding the prosecution
            and interference......................................................18

        2.  The district court's errors were highly prejudicial ..................22

B.     The District Court's *i4i* Instruction Was Erroneous And Prejudicial ........................................................................................ 25

CONCLUSION ........................................................................................... 30

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

## CASES

Page(s)

*Applied Medical Resources Corp. v. U.S. Surgical Corp.*,
    147 F.3d 1374 (Fed. Cir. 1998) ....................................................19, 20

*Ariad Pharmaceuticals, Inc. v. Eli Lilly & Co.*,
    598 F.3d 1336 (Fed. Cir. 2010) ............................................................3

*Callaway Golf Co. v. Acushnet Co.*,
    576 F.3d 1331 (Fed. Cir. 2009) ..........................................................19

*Carnegie Mellon University v. Hoffmann-LaRoche Inc.*,
    541 F.3d 1115 (Fed. Cir. 2008) ........................................................7, 8

*Coakwell v. United States*,
    292 F.3d 918 (Ct. Cl. 1961) ...............................................................15

*Commil USA, LLC v. Cisco Systems, Inc.*,
    720 F.3d 1361 (Fed. Cir. 2013) ..........................................................28

*Conservolite, Inc. v. Widmayer*,
    21 F.3d 1098 (Fed. Cir. 1994) ............................................................15

*ePlus, Inc. v. Lawson Software, Inc.*,
    700 F.3d 509 (Fed. Cir. 2012) ............................................................12

*EZ Loader Boat Trailers, Inc. v. Cox Trailers*,
    746 F.2d 375 (7th Cir. 1984) .............................................................17

*Feld v. Feld*,
    688 F.3d 779 (D.C. Cir. 2012).............................................................13

*In re Alonso*,
    545 F.3d 1015 (Fed. Cir. 2008) ............................................................8

*In re Angstadt*,
    537 F.2d 498 (C.C.P.A. 1976) ............................................................10

*Intervet Inc. v. Merial Ltd.*,
    617 F.3d 1282 (Fed. Cir. 2010) ............................................................7

*Ji v. Bose Corp.*,
626 F.3d 116 (1st Cir. 2010) ..................................................................12, 13

*Koito Manufacturing Co. v. Turn-Key-Tech, LLC*,
381 F.3d 1142 (Fed. Cir. 2004) ...............................................................6

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
694 F.3d 51 (Fed. Cir. 2012) ...................................................................6

*Lindemann Maschinenfabrik GmbH v. American Hoist & Derrick Co.*,
730 F.2d 1452 (Fed. Cir. 1984) .....................................................23, 25, 26, 27

*Mauser v. Raytheon Co. Pension Plan for Salaried Employees*,
239 F.3d 51 (1st Cir. 2001) .....................................................................13

*Microsoft Corp. v. i4i Limited Partnership*,
131 S. Ct. 2238 (2011) .............................................................................2, 25, 27

*NTP, Inc. v. Research in Motion, Ltd.*,
418 F.3d 1282 (Fed. Cir. 2005) ...............................................................28

*Pharmacia & Upjohn Co. v. Mylan Pharmaceuticals, Inc.*,
170 F.3d 1373 (Fed. Cir. 1999) ...............................................................14

*Rekhi v. Wildwood Industries, Inc.*,
61 F.3d 1313 (7th Cir. 1995) ...................................................................13

*Rivera-Torres v. Ortiz Velez*,
341 F.3d 86 (1st Cir. 2003) .....................................................................13

*Romano v. U-Haul Int'l*,
233 F.3d 655 (1st Cir. 2000) ...................................................................28

*Sharon v. Hill*,
26 F. 337 (C.C.D. Cal. 1885) ..................................................................15

*Terra Firma Investments (GP) 2 Ltd. v. Citigroup Inc.*,
716 F.3d 296 (2d Cir. 2013) ....................................................................27

*United States v. Zannino*,
895 F.2d 1 (1st Cir. 1990) .......................................................................18

*United Technologies Corp. v. Chromalloy Gas Turbine Corp.*,
   189 F.3d 1338 (Fed. Cir. 1999) .......................................................... 13

*Vas-Cath, Inc. v. Curators of University of Missouri*,
   473 F.3d 1376 (Fed. Cir. 2007) .......................................................... 17

*Williams v. Illinois*,
   132 S. Ct. 2221 (2012) ........................................................................ 21

*Yeaton v. United States*,
   9 U.S. (5 Cranch) 281 (1809) ............................................................. 15

## STATUTES

35 U.S.C.
   § 141 ................................................................................................. 14
   § 146 ................................................................................................. 15

## OTHER AUTHORITIES

*Restatement (Second) of Judgments* (1982) ............................................. 17

Wright, Charles Alan, *et al.*, *Federal Practice and Procedure* (2d ed.
   2002) ................................................................................................. 14

# INTRODUCTION

AbbVie was the first to invent fully-human, neutralizing, high-affinity antibodies to the IL-12 antigen. The patents-in-suit disclose and enable every known species in each claimed genus of such antibodies *except* Centocor's infringing embodiment, Stelara. Centocor's effort to dismiss these species as unrepresentative fails.

Centocor's speculation that the claimed genuses "could" contain other hypothetical antibodies, not yet discovered despite years of research, contradicts unrebutted testimony that each genus is small because fully-human antibodies that satisfy the affinity and neutralization limitations are rare. The disclosed species are representative of the full scope of what is claimed because they exemplify the range of antibodies that satisfy the neutralization and affinity limitations. Even if disclosure of structural variation were required, it was undisputed that the disclosed species are structurally diverse in the region primarily responsible for determining binding characteristics. By contrast, the irrelevant distinctions that Centocor points to between Stelara and the disclosed species are effectively a non-infringement position under the guise of written description and enablement.

Additionally, validity should not have been tried to the jury at all. The prior final judgment of the BPAI should have collaterally estopped Centocor from a rematch on the same issue in other litigation while Centocor was seeking review of

the BPAI's judgment in the district court.  Centocor's argument that collateral

estoppel was waived below ignores AbbVie's post-trial brief preserving this

question of law, and Centocor's argument that collateral estoppel does not apply to

BPAI decisions is contrary to the vast weight of authority.

The district court's failure to apply collateral estoppel led directly to a series

of practical problems at trial.  Ultimately, the district court precluded any mention

of the interference in the jury trial, which unfolded as though the interference never

happened.  Centocor concedes that the district court's post-trial understanding of

its own evidentiary rulings "was mistaken."  Centocor Br. 55.  This mistake,

moreover, was symptomatic of the confusion that pervaded the court's evidentiary

decisions on the file history throughout trial.  At a minimum, a remand for

reconsideration or a new trial is warranted.

These errors were exacerbated by the court's instruction on Centocor's

burden of proof in light of its introduction of art and other "additional information"

not before the PTO.  Centocor's argument that the district court's instruction

partially tracked the language of *Microsoft Corp. v. i4i Limited Partnership*, 131 S.

Ct. 2238 (2011), is beside the point.  The error was not in giving an *i4i* instruction,

but rather in *refusing* to instruct the jury that, to be material under this Court's

precedent, the uncited art must be "more pertinent" or "more relevant" than the art

before the examiner.  Centocor does not even try to defend the district court's

unfounded assertion that this binding precedent was *overruled* by *i4i*. This error on an issue as fundamental as the burden of proof was unfairly prejudicial and requires a new trial.

## ARGUMENT

### I. AbbVie's Patents Satisfy The Representative Species Test For Written Description

Centocor admits, as it must, that there are two tests to determine whether a patent provides an adequate written description for a genus claim. Centocor Br. 21. Under the first test, the written description requirement is met if the patent discloses a "representative number of species falling within the scope of the genus." *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1350 (Fed. Cir. 2010). Under the second test, the written description requirement is met if the patent discloses "structural features common to the members of the genus so that one of skill in the art can 'visualize or recognize' the members of the genus." *Id.*

At trial and on appeal, Centocor failed to present substantial evidence to carry its heavy burden of showing that the many antibody species disclosed in AbbVie's patents do not satisfy the representative species test. AbbVie Br. 30-31. Indeed, Centocor does not dispute that, even after years of searching by both AbbVie and Centocor, AbbVie's patents disclose *all but one* known species in each claimed genus. Centocor Br. 28. Under the correct interpretation of this

Court's representative species test, no reasonable jury could have found that AbbVie's patents fail to describe its claimed invention.

### A. Each Claimed Genus Is Small Relative To The Number Of Disclosed Species

At trial, it was undisputed that the number of known antibodies within the scope of each claimed genus is small, from as few as 7 (claim 30 of the '128 patent) to at most approximately 200 (claim 11 of the '485 patent, which is the only claim without a neutralization limitation). AbbVie Br. 31; A7336-7337 (Marks). Each claimed genus is small because the functional requirements of the claims are precisely defined to capture a tiny subset of all possible IL-12 antibodies. A7336-7337 (Marks). Only fully-human antibodies with exceptionally potent binding affinity to IL-12 are covered by the claims. *Id.* AbbVie was indisputably the first to discover this rare class of antibodies. *See* AbbVie Br. 10-11.

At trial, Dr. Marks explained that as the functional requirements of the antibody become more precise, the number of antibodies that meet those requirements falls dramatically, such that very few antibodies ultimately satisfy the strict requirements of AbbVie's claims. A7336-7337 (Marks).



A14936.  Dr. Marks also explained based on experimental results that each time AbbVie attempted to find antibodies with better neutralization and affinity properties, the number of antibodies that met those requirements became smaller and smaller.  A7336-7337 (Marks).  Dr. Marks' testimony thus provides overwhelming evidence that the number of antibodies disclosed for each claimed genus was commensurate with the size of each genus claim.  *Id.*

This evidence of the exceedingly small size of the genus claims at issue was unrebutted at trial and is entirely ignored by Centocor on appeal.  Centocor instead speculates, without any scientific evidence, that the number of antibodies within AbbVie's claimed genus is essentially unlimited, and could be any number within some unfathomably large group (*i.e.*, a theoretical group of $10^{27}$ antibodies).

Centocor Br. 29.[1]  Likewise, Centocor speculates, without evidentiary support, that

there "*could be* many different families of antibodies in addition to the Joe-9

family, including families based off of the other antibodies … that *could be* within

the claim scope."  *Id.* at 8 (emphases added).  Centocor introduced no evidence of

any such families of antibodies at trial.  And Centocor cites nothing to support

these assertions except more speculation by its expert, who never even made one

fully-human antibody to IL-12.  A6626-6627; A6687-6688.  Such unsupported

speculation by an expert is not sufficient to support a jury verdict.  *See*

*LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 81 (Fed. Cir. 2012)

("'When an expert opinion is not supported by sufficient facts to validate it in the

eyes of the law, or when indisputable record facts contradict or otherwise render

the opinion unreasonable, it cannot support a jury's verdict.'"  (citation omitted));

*Koito Mfg. Co. v. Turn-Key-Tech, LLC*, 381 F.3d 1142, 1152 (Fed. Cir. 2004)

("General and conclusory [expert] testimony … does not suffice as substantial

evidence of invalidity.").

## B.   The Disclosed Species Are Representative

Under the representative species test, a patent satisfies the written

description requirement for a genus claim when "the species which are adequately

---

[1]      *Amici* Eli Lilly and Pfizer similarly hypothesize a fancifully large or even
"unknowable" number of species in the claimed genuses.  Lilly Amicus Br. 20-22.
These calculations have not been tested in the crucible of litigation and are founded
on materials outside the record.  They should be discounted accordingly.

described are representative of the entire genus." *See Carnegie Mellon Univ. v. Hoffmann-LaRoche Inc.*, 541 F.3d 1115, 1124 (Fed. Cir. 2008). To be representative, the disclosed antibodies must (1) be commensurate with the size of the genus and (2) reflect any substantial variation within the genus. *See Intervet Inc. v. Merial Ltd.*, 617 F.3d 1282, 1287 (Fed. Cir. 2010) ("Claims properly directed to a genus may be adequately supported by the patent disclosure if a sufficient number of species is disclosed so as to properly identify the scope of the [claimed] genus."); *Carnegie Mellon*, 541 F.3d at 1124 ("'[W]hen there is substantial variation within the genus, one must describe a sufficient variety of species to reflect the variation within the genus.'").

The species disclosed in AbbVie's patents represent the full variation in the claimed features of each genus. The evidence at trial showed that the $k_{off}$ rates of the disclosed antibodies varied substantially and reflected the full range of binding affinities that would satisfy the claim limitations. *See* AbbVie Br. 32-33.

Centocor argues that the disclosed species are not representative of "structural variability" within each claimed genus. Centocor Br. 22; *see also* Lilly Amicus Br. 10-12. But, as even Centocor concedes (Centocor Br. 21), this Court has set forth two separate tests for satisfying the written description requirement: disclosure of representative species *or* common structural features. Requiring disclosed species to be representative of structural variability would collapse these

7

two tests, essentially mandating disclosure of structural features that are irrelevant to what is claimed.  Indeed, Centocor's written description position at trial and before this Court is premised on showing that a single disclosed species, the J695 antibody, does not have certain unclaimed structural features in common with the infringing Stelara antibody (Centocor Br. 23-27), even though there was no evidence that any of these structural features correlates with the claimed binding properties—*i.e.*, neutralization and affinity.  AbbVie Br. 34-37.[2]

In any event, the disclosed antibodies are structurally diverse.  Centocor repeatedly asserts that "[c]hanging even a *single* amino acid in the variable region of an antibody – *i.e.*, replacing the amino acid with one of the nineteen other amino acids – can make the difference between whether an antibody binds to a desired target, or not, how tightly it binds, and whether it has any biological activity."  Centocor Br. 6.  That fact, however, only serves to confirm that AbbVie's patents disclose a structurally diverse, and thus amply representative, collection of antibodies within each claimed genus.

---

[2]     Centocor's reliance on *Carnegie Mellon* and *Alonzo* is misplaced.  Neither case requires that a patent always disclose structural features common to the genus to satisfy the written description requirement.  Rather, in both cases, the Court found that disclosure of *only one species* was not sufficient written description support for much broader genus claims.  *See In re Alonso*, 545 F.3d 1015, 1017-1018 (Fed. Cir. 2008) (disclosure of a single antibody); *Carnegie Mellon*, 541 F.3d at 1123-1124 (disclosure of a DNA sequence for only one bacterium).

AbbVie's patents specifically disclose hundreds of different antibodies with hundreds of different amino acid sequences in the critical variable region portion of the antibody that determines its binding characteristics. A6745-6746 (Siegel); A7183-7194 (Wilson); A7345 (Marks). Each of these antibodies has widely varying binding characteristics to IL-12. *Id.* In fact, as AbbVie showed at trial, and as Centocor's expert, Dr. Siegel, admitted, many of AbbVie's antibodies have binding characteristics more similar to Centocor's infringing Stelara antibody than to the original "Joe 9" antibody. A6739-6740 (Siegel); A7361 (Marks). Centocor's suggestion that AbbVie's disclosed antibodies are one homogeneous "family" of antibodies with similar functional properties is wholly unsupported in the record, and directly contrary to its own admissions regarding the relationship between antibody structure and function.

Disclosure of the additional, unclaimed structural features of Stelara that Centocor emphasizes (Centocor Br. 23-26) was not necessary in light of this detailed and varied disclosure. Indeed, Centocor's theory would make it nearly impossible to claim a genus of antibodies because an infringer could always argue that arbitrary structural distinctions in its accused antibody should have been disclosed. Under the correct representative species test, the jury verdict of invalidity for lack of written description must be reversed.

9

## II.  ABBVIE'S PATENTS ENABLE REPRESENTATIVE SPECIES FOR EACH GENUS CLAIM

A patent claiming a genus satisfies the enablement requirement if it enables a representative number of species within the claimed genus.  *In re Angstadt*, 537 F.2d 498, 502-503 (C.C.P.A. 1976).  Under this standard, the evidence of enablement was overwhelming, and no reasonable jury could have found otherwise.  First, for the reasons already discussed with regard to written description, the disclosed species in the patent were representative of each claimed genus.  Second, as the district court recognized, it was "*uncontested that the patent enables all of the disclosed species*."  A17 (emphasis added).  Thus, AbbVie's patents enabled representative species for each claimed genus.

Centocor applies the wrong enablement test in arguing that AbbVie had to enable the infringing Stelara antibody.  Centocor Br. 37-38.  As *Angstadt* makes clear, the patent need only enable representative species and need not specifically enable the infringing species.  537 F.2d at 502-503.  Centocor's attempt to distinguish *Angstadt* fails.  In *Angstadt*, as in this case, enabling a representative subset of the claimed genus was sufficient to satisfy the enablement requirement for the broader genus.  *Id.*  The Court in *Angstadt* did not find, as Centocor suggests, that the patent's disclosure had specifically enabled every species in the claimed genus.  *See id.*

10

Accordingly, under the correct test for enablement of a genus claim, the jury verdict of invalidity for lack of enablement must be reversed.

## III. COLLATERAL ESTOPPEL REQUIRES A REMAND OF BOTH ACTIONS

Even apart from the substantive flaws in Centocor's written description and enablement arguments, collateral estoppel should have barred Centocor from relitigating in the infringement action the same issue of validity that was already decided against it in a prior final judgment by the BPAI, after a full and fair adversarial process that Centocor itself initiated. AbbVie Br. 39-49. Centocor claims that this argument was waived and clearly would prefer to avoid confronting it, but the argument was properly preserved and requires a remand.

### A. Collateral Estoppel Is Properly Before This Court

AbbVie preserved its collateral estoppel argument in the post-trial briefing in the Section 146 action, which the parties and the district court treated as intertwined with the infringement action. After the district court ruled at summary judgment that Centocor would be allowed to relitigate validity in the infringement action, the two suits were consolidated for trial. A78. At the conclusion of the evidence, the parties agreed that post-trial briefing in both actions would proceed concurrently. A7690; *see also* A2435 (Centocor's recognition that "[t]he parties agreed that argument in the 146 Action should proceed *as part of the post-trial briefing in the Infringement Action*" (emphasis added)). AbbVie subsequently

11

made clear in its post-trial briefing in the Section 146 action that it had not waived its collateral estoppel defense:

> For the reasons set forth in [AbbVie]'s Motion for Summary Judgment Number 2 in the infringement action, which [AbbVie] incorporates by reference herein, Centocor should have been barred from re-litigating, at a minimum, its priority and obviousness arguments, including obviousness arguments based on additional references that Centocor chose not to raise in the interference.

A2475; *see also* A7752 (discussion of estoppel at post-trial hearing on JMOL and new trial motions).

Centocor does not acknowledge this briefing, nor does it cite any precedent requiring AbbVie to additionally note its estoppel objection in its concurrent briefing in the infringement action. When "it is abundantly clear from the record that the district court did not intend to revisit the … issue once it denied summary judgment," a party is "not required to ignore the writing on the wall and press the issue over and over again to preserve it for appeal." *ePlus, Inc. v. Lawson Software, Inc.*, 700 F.3d 509, 517-518 (Fed. Cir. 2012).

The First Circuit opinion on which Centocor relies is inapposite. In *Ji v. Bose Corp.*, the court stressed that the defendants had "at no point … restated their challenge" after summary judgment. 626 F.3d 116, 128 (1st Cir. 2010). The same cannot be said here, where AbbVie restated its estoppel challenge in post-trial briefing in the Section 146 action, which the parties agreed "should proceed as part of the post-trial briefing in the Infringement Action." A2435.

12

Further, *Ji*'s statement that pure questions of law resolved at summary judgment must be raised again at JMOL was dicta. *Ji* did not involve such a question, *see* 626 F.3d at 128 n.11 (question of "conflicting factual inferences from competing contracts"), nor did the precedents by which it felt bound, *see Rivera-Torres v. Ortiz Velez*, 341 F.3d 86, 92-93 (1st Cir. 2003) (question of qualified immunity where "facts elicited at trial are often probative"); *Mauser v. Raytheon Co. Pension Plan for Salaried Employees*, 239 F.3d 51, 55 (1st Cir. 2001) (question of whether plaintiff could prove reasonable reliance on ERISA plan documents). Moreover, the dicta in *Ji* is contrary to the weight of authority and would create a circuit split if followed. *See United Techs. Corp. v. Chromalloy Gas Turbine Corp.*, 189 F.3d 1338, 1344 (Fed. Cir. 1999); *Feld v. Feld*, 688 F.3d 779, 781-783 (D.C. Cir. 2012) (collecting cases).

The strict waiver rule urged by Centocor would be particularly inapt for collateral estoppel. If summary judgment on collateral estoppel is denied, nothing that occurs at a later trial alters the essential estoppel argument that one party "had a substantive entitlement to head off [the other] at the pass," preventing the trial from occurring at all. *Rekhi v. Wildwood Indus., Inc.*, 61 F.3d 1313, 1318 (7th Cir. 1995) (Posner, J.). And concerns of unfair surprise or prejudice are absent where, as here, estoppel is asserted based on a prior final judgment in litigation between the same parties.

In any event, the soundness of Centocor's waiver rule is academic. The preclusive effect of the Board's final judgment was fully joined below before and after trial, was decided on the merits by the district court at summary judgment, and is properly before this Court in the present appeals.

### B. The Pendency Of The Section 146 Action Did Not Render The Board's Judgment "Not Yet Final"

Centocor argues that the Board's judgment in the interference was not yet a final binding judgment because it was under review by the district court in the 146 action. Centocor Br. 42-44. But Centocor's view that "the interference ruling is not final and binding when it is issued by the PTO" (Centocor Br. 43) cannot be reconciled with the right to seek immediate review of the Board's judgment in this Court under 35 U.S.C. § 141. The finality of the Board's judgment cannot turn on strategic decisions made *after* it is issued.

Nor can Centocor's view be squared with the "vast weight of case law," under which "'a final judgment retains all of its res judicata consequences pending decision of [an] appeal'" from the judgment. *Pharmacia & Upjohn Co. v. Mylan Pharms., Inc.*, 170 F.3d 1373, 1381 (Fed. Cir. 1999). The district court relied on an exception to this settled rule that applies in the "virtually nonexistent situation in which the 'appeal' actually involves a full trial de novo." 18A Wright *et al.*, *Federal Practice and Procedure* § 4433 (2d ed. 2002). But the pending Section 146 action does not trigger this narrow exception, which apparently originated in

14

proceedings in equity and admiralty in which an appeal "remove[d] the whole case into the court above, for trial de novo" as though the initial proceeding never happened. *Sharon v. Hill*, 26 F. 337, 345 (C.C.D. Cal. 1885); *see, e.g.*, *Yeaton v. United States*, 9 U.S. (5 Cranch) 281, 283 (1809) (Marshall, C.J.).

An action under Section 146 is not heard de novo in this sense; instead, it is "'derivative of the interference conducted in the PTO.'" Centocor Br. 43 (quoting *Rexam Indus. Corp. v. Eastman Kodak Co.*, 182 F.3d 1366, 1370 (Fed. Cir. 1999)). The proceedings begin with the evidentiary record from the interference itself. 35 U.S.C. § 146; *see also* A873 (order admitting interference record in 146 action). "[T]he right to offer new evidence" to supplement that existing record "is not unlimited." *Conservolite, Inc. v. Widmayer*, 21 F.3d 1098, 1102 (Fed. Cir. 1994). And "[w]hile the expression '*de novo*' is often used to describe a § 146 action, the statute does not use this language or state that new issues can freely be raised." *Id.*

The only case cited by Centocor on the preclusive effect of interference judgments actually supports AbbVie. *Coakwell v. United States* held that an unappealed interference decision should be accorded the same preclusive effect as a decision that had been affirmed on appeal. 292 F.2d 918, 920 (Ct. Cl. 1961). In either case, the losing party "has had 'its day in court.'" *Id.* at 921. That is, the interference itself is the "day in court" for preclusion purposes.

Finally, permitting relitigation of validity in an infringement action while a Section 146 action is pending makes little practical sense in light of the differing burdens of proof in the two suits. Had the jury determined that Centocor failed to show invalidity by clear and convincing evidence, Centocor argued below that it would then have been entitled to attempt to show invalidity by a preponderance of evidence in the 146 action. A2492 (supplemental estoppel briefing); *see also* A2503-2504 (post-trial motion for judgment in 146 action). The possibility of such a *third* bite at the apple—an interference, a jury trial, and a Section 146 action on the same issue—is anathema to traditional principles of collateral estoppel.

### C. Having Chosen To Litigate Validity Before The BPAI, Centocor Cannot Now Complain About Its Procedures, Which Are Fair

As a last resort, Centocor claims that the Board proceedings were unfair. Centocor Br. 45-47. But it has failed to carry its burden of showing that it lacked a full and fair opportunity to litigate validity in the PTO.

*First*, Centocor's belated complaints concerning the procedures followed in the interference are at odds with its decision to precipitate the interference and to litigate validity in the PTO. Centocor was perfectly content with the procedures afforded to it in the interference—until it lost. "The fact that [plaintiff] chose the forum in which to proceed weighs in favor of collateral application of that forum's findings, and of discounting [plaintiff]'s complaints of procedural inadequacies."

*EZ Loader Boat Trailers, Inc. v. Cox Trailers*, 746 F.2d 375, 377 (7th Cir. 1984)

(citation omitted).

    *Second*, the Board's proceedings are fair. As this Court has recognized, an

interference bears many of the hallmarks of district court litigation:

> [C]ontested interference proceedings in the PTO bear strong
> similarities to civil litigation, and the administrative proceeding can
> indeed be characterized as a lawsuit. PTO interferences involve
> adverse parties, examination and cross-examination by deposition of
> witnesses, production of documentary evidence, findings by an
> impartial federal adjudicator, and power to implement the decision.

*Vas-Cath, Inc. v. Curators of Univ. of Mo.*, 473 F.3d 1376, 1382 (Fed. Cir. 2007)

(internal quotation marks and citation omitted). Interference proceedings thus go

far beyond the requirement that, for preclusion to attach, agency proceedings need

only have the "essential elements of adjudication," such as "[t]he right … to

present evidence and argument." *Restatement (Second) of Judgments* § 83 (1982).

    Centocor's real complaint (Centocor Br. 46) seems to be not that the Board's

processes were unfair per se but rather that they did not result in Centocor

obtaining the crystal structure data of AbbVie's J695 antibody, which Centocor

used at trial to draw an irrelevant contrast with its own infringing embodiment,

Stelara. *See supra* p. 8. That evidence merely underscores why estoppel should

have attached here. Absent estoppel, Centocor was allowed to misleadingly

present the crystal structure data to the jury as "new" evidence, without the jury

ever learning that Centocor had abandoned its written description and enablement

arguments in the interference. A6396 (Eck); A6901 (Salfeld); A7616 (closing).

Had the proceedings unfolded as traditional estoppel principles mandated, the

district court could have considered this evidence in the Section 146 action and

would have discounted it in light of the interference record as a whole.

A remand of both actions is necessary to permit the district court to resolve

the Section 146 action on the merits.[3]

## IV. IN THE ALTERNATIVE, A NEW JURY TRIAL IS WARRANTED

### A. The District Court's Exclusion Of Evidence Regarding The Interference And File History Warrants A New Trial

#### 1. The district court improperly foreclosed AbbVie from presenting important evidence regarding the prosecution and interference

Centocor concedes that the district court "was mistaken" when it stated in

denying AbbVie's new trial motion that the court "had not excluded the fact that

Centocor participated in [the interference] proceeding." Centocor Br. 55. In fact,

such evidence was excluded. This concession confirms that the denial of AbbVie's

motion for a new trial rested on an incorrect premise. At a minimum, this mistake

---

[3]     Centocor suggests that this Court should distinguish between obviousness and other invalidity defenses for estoppel purposes, since Centocor dropped its enablement and written-description contentions and chose to pursue only obviousness to final judgment in the PTO. Centocor Br. 18, 46 n.7. The argument is made only in passing and is therefore waived. *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990). In any event, the argument fails for the reasons set forth in AbbVie's opening brief (at 41-42) and in the district court's estoppel decision (A67 n.16).

warrants a remand.  More generally, it underscores the uncertainty, confusion, and inconsistency that permeated the proceedings and the district court's evolving rationales for excluding crucial evidence.

Although Centocor defends the district court's "one misstatement" as an anomaly (Centocor Br. 55), this "misstatement" of a key ruling upon which AbbVie sought a new trial cannot be so easily dismissed.  Indeed, it implies that the district court itself, after reviewing the trial record, was not persuaded that Centocor's participation in the interference could or should have been excluded.

Attempting to backfill, Centocor argues that testimony concerning its participation in the interference was properly precluded to avoid "complicated evidence about interference proceedings."  Centocor Br. 51.  But even if that had been the court's reasoning, it could not justify the restrictions placed on AbbVie's ability to present its case.  The court prohibited AbbVie from cross-examining Dr. Siegel "on the fact that there were multiple proceedings before the patent office" and that Centocor participated in one proceeding with the ability to submit prior art—all without getting into detail about the proceedings.  A6249; A6467-6469. [4]

---

[4]     Centocor's cases affirming the exclusion of evidence regarding non-final post-issuance PTO proceedings are very different from the case at hand.  In *Callaway Golf Co. v. Acushnet Co.*, the defendant sought to introduce evidence of an *ongoing* inter partes re-examination.  576 F.3d 1331, 1342-1343 (Fed. Cir. 2009).  Here, in contrast, the interference was completed well before trial and resulted in a final judgment.  In *Applied Medical Resources Corp. v. U.S. Surgical Corp.*, the interference was brought by an unrelated third party.  147 F.3d 1374,

The court also improperly limited AbbVie's right to present evidence regarding the *ex parte* prosecution history. Centocor argues that AbbVie had the opportunity to ask about the cumulativeness of Centocor's invalidity evidence. Centocor Br. 51-52. But to address the cumulativeness of Centocor's prior art and evidence—that is, whether it was any more relevant than the evidence the PTO considered—AbbVie sought and was foreclosed from "tak[ing] Dr. Marks through the file history, not including the interference, to show what the Patent Office did on the issues of written description, enablement, and obviousness, so that the record would be clear that some of the very same arguments that are being made now were made before." A7285.

Had AbbVie been permitted to question Dr. Marks adequately regarding the file history, it also would have elicited the fact that the PTO withdrew its initial rejections on written description and enablement grounds, which were based on a purported lack of "clear and definite structural limitations," after AbbVie amended its claims to include functional affinity limitations with disclosure of numerous representative species and a teaching of extensive screening and mutagenesis methods for identifying human antibodies with high affinity for human IL-12. A11716-11725 (examiner's initial rejection); A11888-11890 (AbbVie's

---

1380 (Fed. Cir. 1998). Exclusion was affirmed for fear that the decision "could conflate factual inquiries" by requiring the jury to compare the defendant's infringing product with the third party's unrelated patent. *Id.* at 1380-1381.

amendment).  The court, however, excluded this testimony relating to the original

prosecution.  *See* A7284-7285; A7520.

Centocor accuses AbbVie of making a "stealth collateral estoppel" argument

by stating that it would be "almost impossible" for Centocor to overcome the

presumption of validity based on arguments that were already considered and

rejected by the PTO.  Centocor Br. 50-51.  But AbbVie's statement merely reflects

the established rule that evidence regarding what was and was not presented to the

PTO could directly affect the ease or difficulty with which Centocor could

discharge its already high burden.  Rule 403 protects against "unfair prejudice,"

not against probative evidence that happens to disfavor Centocor.

The court further erred when it prevented AbbVie from cross-examining

Centocor's expert, Dr. Siegel, regarding his consideration of the interference

decision.  Centocor asserts that it never opened the door to this line of questioning.

Centocor Br. 51.  But when Dr. Siegel touted his "independent analysis," he

invited an inquiry into the fact that he considered the interference decision, but not

other portions of the file histories, in writing his report.  *See* AbbVie Br. 51-52;

*Williams v. Illinois*, 132 S. Ct. 2221, 2240 (2012) ("[T]he disclosure of basis

evidence can help the factfinder understand the expert's thought process and

determine what weight to give to the expert's opinion.").  The court's preclusion of

testimony regarding the noninterference portions of the file histories Centocor's

expert strategically did not consider—combined with its exclusion of any questioning regarding the interference portion that he did consider (A6781-6783)—had the effect of insulating Centocor's expert from cross-examination on critical evidence directly at odds with his opinions.

### 2. The district court's errors were highly prejudicial

Centocor tries to minimize the cumulative prejudice of the district court's errors by arguing that AbbVie never explained what evidence it would have admitted and how exclusion of that evidence affects its rights. Centocor Br. 56. But AbbVie listed such evidence and explained the resulting prejudice on pages 50-52 and 56 of its brief. In particular, had AbbVie not been precluded from eliciting testimony regarding the file history, including the PTO's consideration of similar written description and enablement issues, the jury could have determined that Centocor's arguments concerning amino acid sequences and antibody structure were cumulative, making Centocor's burden more difficult to meet. This prejudice was especially acute in light of the court's instruction that all types of "additional information" the PTO "did not have an opportunity to consider"—and not just additional prior art—may affect Centocor's burden. A350.

Centocor argues that the putatively "new" evidence was not in fact a "centerpiece of Centocor's defense." Centocor Br. 53-54. But Centocor raised the point in both its opening and closing arguments, telling the jury that the "new"

22

evidence was critical. *See* A7625. In any event, it is Centocor that "mis-describes the record" (Centocor Br. 53) by implying that these were the only instances when Centocor emphasized evidence that was not before the PTO, without the jury ever learning of Centocor's role in the PTO proceedings. *See* A6396 (Centocor eliciting testimony from Dr. Eck that J695 crystal structure data was AbbVie "confidential information" provided "confidentially as part of preparation for this case"); A6901 (Centocor asking Dr. Salfeld whether crystal structure data "until it was disclosed earlier in this proceeding here in court, was … held confidential by" AbbVie).

Further, Centocor never even attempted to carry its burden of proving that the Meager article it highlighted was more relevant than, or not cumulative of, the other prior art references that were before the PTO. *See infra* p. 25; *Lindemann Maschinenfabrik GmbH v. American Hoist & Derrick Co.*, 730 F.2d 1452, 1460 (Fed. Cir. 1984). In fact, the Meager article—like the articles that were before the PTO—does not disclose the amino acid code for building any fully human antibodies against IL-12. It taught only antibodies found in patients with a neurological disorder, and it provided no $k_{off}$ measurement for these antibodies. A6652-6654 (Siegel). As for Centocor's crystal structure evidence, it was not even prior art, and although the PTO never considered this particular evidence, it did consider specific written description arguments focusing on antibody structure when issuing the patents. A11716-11725. Not only is Centocor's crystal structure

evidence cumulative of these structural arguments, but once AbbVie amended its claims to include functional affinity limitations, it became irrelevant to the invalidity issues before the PTO and the jury.  A11878; A11888-11890; *see supra* p. 20.

Additionally, had AbbVie been permitted to introduce evidence from the interference proceeding, or, at a minimum, to elicit the fact that there had been a proceeding in which Centocor participated, the jury could have concluded that some of the very same arguments Centocor was making at trial had been unsuccessfully presented to the PTO.  For instance, the jury likely would have accorded little, if any, weight to Centocor's arguments concerning the predictability of phage display technology had it learned that the Board already considered and rejected such an argument in the interference.  A161-163; A10745.

The jury also could have drawn the reasonable inference that, despite having had an opportunity to present certain arguments and evidence to the PTO, Centocor chose not to because it recognized them to be immaterial and weak.  Instead, the court's ruling was unfairly prejudicial because it left the jury with the inaccurate impression that it was AbbVie, rather than Centocor, that failed to provide the PTO with the "additional" evidence that Centocor then presented at trial.  This could well have led the jury to doubt AbbVie's motives or to infer that Centocor's

24

evidence must be material and of "significant weight." A350. Such an inaccurate impression likely swayed the jury against AbbVie and in favor of Centocor.

## B.    The District Court's *i4i* Instruction Was Erroneous And Prejudicial

The district court instructed the jury that the introduction of "material" information that was not before the PTO could make Centocor's burden of proving invalidity "easier to meet." A350. This Court has held, however, that a challenger's burden of proving invalidity is made easier only when uncited art is "more pertinent" or "more relevant" than the information before the PTO. *American Hoist*, 730 F.2d at 1459-1460. The district court nonetheless refused AbbVie's request to give an instruction to this effect, in part because the court believed *American Hoist* had "been superceded or overruled by i4i." A43. This refusal to instruct the jury properly on a key issue relating to the burden of proof was unduly prejudicial and requires a new trial.

Notably, Centocor makes no attempt to defend the district court's conclusion that *American Hoist* was overruled by *Microsoft Corp. v. i4i Ltd. Partnership*, 131 S. Ct. 2238 (2011). Centocor thus fails to defend one of the key pillars of the decision denying AbbVie's motion for a new trial. Instead, Centocor argues that the portion of *American Hoist* on which AbbVie relies is dicta that does not support AbbVie's position. Centocor Br. 57, 60. In fact, it is not dicta. *American Hoist* specifically held that it was erroneous for the district court to find that the

25

introduction of prior art not cited by the examiner altered the presumption of patent validity and the clear and convincing burden of proof, and that it was erroneous to require the patentee to prove that the uncited art had been considered by the PTO. 730 F.2d at 1459. In making this ruling, the Court explained that while the burden of proof does not change, "the clear and convincing standard may more easily be met when such non-considered art is *more* pertinent than the cited art." *Id.* It also explained that "the touchstone" in this determination is "whether the uncited art is sufficiently more relevant than that cited to serve as evidence of obviousness" and that "the burden is on the challenger" to make this showing. *Id.* at 1459-1460.

Moreover, Centocor misconstrues *American Hoist*, arguing that it does not hold that "the non-considered art *must be more* material than the considered art for the jury to consider giving it more weight." Centocor Br. 60. But this is precisely what *American Hoist* meant when it said that the challenger's burden "may more easily be met when such non-considered art is *more* pertinent than the cited art." 730 F.2d at 1459. Indeed, the Court went on to explain that "the patentee defeats the uncited art by showing that its relevancy is *equal to* or less than that cited." *Id.* at 1460 (emphasis added). In other words, if the non-considered art is not *more* pertinent, but rather equally pertinent, then there is no effect.

Centocor is equally wrong in accusing AbbVie of providing no legal support for the proposition that it was Centocor's burden to prove materiality and that the

jury should have been instructed of the same.  Centocor Br. 59-60.  *American Hoist* explicitly places this burden on the patent challenger:  "[T]he burden is on the challenger to show that 'that prior art had *not* been considered.'  The challenger meets that particular burden by showing that the uncited art is more relevant than that cited[.]"  730 F.2d at 1459-1460 (internal citation omitted).  Centocor fails to cite a single case to the contrary.

Centocor's argument that the jury instruction tracked the language of *i4i* is beside the point.  The instruction still remained incomplete because it failed to reflect this Court's holdings, which were not disturbed by *i4i* and remain binding.  *See* AbbVie Br. 58-59.  In any event, the instruction did *not* track *i4i*.  The Supreme Court used the term "materially new," 131 S. Ct. at 2251, which is consistent with this Court's precedent requiring non-cumulativeness, *see* AbbVie Br. 57-58, 60.  But the district court instructed the jury that the new evidence need only be "material," meaning "important" to a "reasonable patent examiner."  A350.  This shift in terminology opened the door for the jury to give undue weight to cumulative evidence that might be considered important in the abstract but was no more pertinent than the art already considered by the PTO.

Centocor argues that even if the district court's instruction was erroneous, AbbVie has not shown prejudice.  But "it is accepted that an error in instructing a jury on the burden of proof is ordinarily harmful."  *Terra Firma Investments (GP)*

27

*2 Ltd. v. Citigroup Inc.*, 716 F.3d 296, 298 (2d Cir. 2013). Indeed, the error in this case affected the outcome not only on obviousness, but also on written description and enablement.[5] *Commil USA, LLC v. Cisco Sys., Inc.*, 720 F.3d 1361, 1367 (Fed. Cir. 2013) (erroneous instruction was prejudicial because it "could have changed the result"); *Romano v. U-Haul Int'l,* 233 F.3d 655, 667 (1st Cir. 2000) (similar).

As AbbVie explained in its opening brief, a proper instruction would have required the jury to assess whether Centocor made the necessary showing that its additional evidence was more relevant than the evidence already considered by the PTO, before the jury could give it any additional weight tending to make Centocor's burden of proving invalidity easier to meet. AbbVie Br. 60. A2173-2174 (AbbVie's requested instruction, including on burden of proof). Instead, the court's instruction permitted Centocor to avoid its responsibility of proving the cumulativeness of its supposedly new evidence. This instructional error was especially prejudicial to AbbVie given that the court's rulings precluded AbbVie from eliciting evidence that would have rebutted Centocor's implication of materiality and non-cumulativeness.

---

[5]     Although AbbVie has not appealed the denial of JMOL on obviousness, this fact does not diminish the prejudicial effect of the district court's erroneous *i4i* instruction. Regardless of whether Centocor's obviousness evidence was legally sufficient for *some* rational jury to rule in its favor, a properly instructed jury would not necessarily have reached the same result, and indeed would likely have decided that Centocor failed to carry its heavy burden. *See NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282, 1312 (Fed. Cir. 2005).

Had the jury been properly instructed, it would have found no reason to give any additional weight to the Meager article, despite Centocor's counsel having "highlight[ed]" it as particularly "important" and new. A6145-6146. Centocor's expert conceded that he had never even attempted to compare the prior art on which he relied to the art before the PTO. A6791; *see also* A7485. Based on a proper instruction, AbbVie's counsel would have been able to argue in closing that Centocor failed to make the proper showing and that the Meager article is no more relevant than the other prior art cited by Centocor, such as the Trinchieri patent considered by the Board, which similarly fails to teach the IL-12 antibody sequence or to disclose the $k_{off}$ limitations in AbbVie's claims. A160; *supra* p. 23.

A proper instruction also would have impacted Centocor's arguments with respect to written description and enablement. Centocor argued that the crystal structure of J695 was "additional information" that made its burden easier to carry. *See* A7625. But Centocor never even attempted to prove that it was more pertinent than the written description evidence focusing on antibody structure that was considered by the PTO.

Accordingly, even if prejudice were not presumed from the court's erroneous instruction, it was manifest and a new trial is required.[6]

---

[6]    Centocor incorrectly implies that AbbVie's new trial arguments do not apply to written description and enablement. *See* Centocor Br. 3. Over AbbVie's objection, the court moved the *i4i* instruction to precede *all* validity issues. *See*

## CONCLUSION

This Court should reverse the written description and enablement judgments

in the infringement action (No. 2013-1338), vacate the obviousness judgment in

the infringement action (No. 2013-1338), vacate the judgment in the Section 146

action (No. 2013-1346), and remand.  If the Court does not enter judgment for

AbbVie on written description and enablement, the remanded Section 146 action

should encompass all of Centocor's validity defenses on the '128 patent.

Alternatively, the Court should vacate both judgments and remand for a new trial.

Dated:  December 16, 2013

WILLIAM G. MCELWAIN
THOMAS G. SAUNDERS
RACHEL L. WEINER
MATTHEW GUARNIERI
WILMER CUTLER PICKERING
    HALE AND DORR LLP
1875 Pennsylvania Ave., NW
Washington, DC  20006
(202) 663-6000

ARTHUR W. COVIELLO
WILMER CUTLER PICKERING
    HALE AND DORR LLP
950 Page Mill Road
Palo Alto, CA  94304
(650) 858-6000

Respectfully submitted.

/s/ William F. Lee
WILLIAM F. LEE
WILMER CUTLER PICKERING
    HALE AND DORR LLP
60 State Street
Boston, MA  02109
(617) 526-6000

ROBERT J. GUNTHER, JR.
JANE M. LOVE
VIOLETTA WATSON
WILMER CUTLER PICKERING
    HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY  10007
(212) 230-8800

---

AbbVie Br. 21.  Further, Centocor used the "new" crystal structure evidence to support its written description and enablement arguments.  A new trial is therefore required on all validity issues.

# CERTIFICATE OF SERVICE

I hereby certify that I filed the foregoing Reply Brief for Plaintiffs-Appellants with the Clerk of the United States Court of Appeals for the Federal Circuit via the CM/ECF system this 16th day of December, 2013, and served a copy on counsel of record by the CM/ECF system.

/s/ William F. Lee
WILLIAM F. LEE

# CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C), the undersigned hereby certifies that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B)(ii).

1.     Exclusive of the exempted portions of the brief, as provided in Federal Rule of Appellate Procedure 32(a)(7)(B), the brief contains 6,983 words.

2.     The brief has been prepared in proportionally spaced typeface using Microsoft Word 2010 in 14 point Times New Roman font.  As permitted by Federal Rule of Appellate Procedure 32(a)(7)(B), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.


Dated:  December 16, 2013              /s/ William F. Lee
                                       WILLIAM F. LEE